Good morning. Nice to finally be together. It's our pleasure. That is the voice of Judge Harold Ackerman, who is sitting by designation. And as you've heard us say before, we are particularly grateful to have the help of judges as experienced and knowledgeable as Judge Ackerman, and I thank him. And I assume you can hear us, Judge Ackerman? I can hear you, and I thank you for your comments. Okay. We will now hear argument in United States v. Carter. Judge Ackerman is heard but not seen. May it please the Court. My name is James Sultan. I represent the defendant appellant John Carter, and with the Court's permission, I would ask to reserve three minutes for rebuttal, during which I propose to deal with the appellant waiver issue, unless the Court wants me to deal with it sooner than that. I would ask that you deal with it sooner rather than later. Indeed, that's a phrase from one of the cases that are cited to me, and if we, that is really the seminal issue here. Well, I will deal with it first, then, Your Honor. Before I do so, though, I do want to make one correction. I need to make one correction. With respect to both, in both my brief in chief and in my reply brief, I cited a case called United States v. EULA, Y-O-U-L-A, 241 F. 3rd, 296, where the Court indicated that the defendant's argument in that case, his sentencing argument, that it had arguable merit. In preparing for this oral argument, I realized that in a subsequent unpublished decision, which the defendant's argument failed on the merits. So I apologize to the Court for my reliance on EULA, and I disclaim any reliance on EULA in the argument. If that's the worst thing you do, you're all right. With respect to the appellant waiver, since Your Honor has asked me to start there, I understand that in a litany of cases, going back to Kaddick and through Gwinnett and many, and now most, and in Goodson recently, this Court has said over and over again that appellant waivers are generally permissible if they're voluntary and if they're knowledgeable. And of course, I don't quarrel with that. The issue, the sole issue, really, in Goodson, I had two issues that I raised, one being the inadequacy of the colloquy, and the other being the total lack of consideration in the plea agreement. Let's take the colloquy issue first. Yes, Your Honor. Well, Your Honor, with respect to the colloquy issue, I think it is... Let me just ask. This case was fully briefed before Goodson was decided. Yes, Your Honor. Correct. And I know there was a 28-J letter, and there was a response to the 28-J letter, but the case was fully briefed before Goodson. What reasoned difference is there between this case and Goodson? Your Honor... In terms of whether error was committed by the district court during the colloquy? That's obviously a fair question, and I think the general principle of Goodson citing Vaughan that Rule 11 errors are going to be looked at through the lens of plain error, I'm stuck with that. In terms of the actual, and I understand that the court has discretion in the plain error area, the only real factual distinction between this case and Goodson with respect to the colloquy is that in Goodson, the prosecutor apparently did provide some explanation of the nature of the waiver. That was really not present in this case at all. There was nothing other than a conclusory reference to the existence of such a waiver made by the prosecutor and by the court. So, factually, that's the only distinction. I don't claim it's a huge distinction. I think that the general principle is we're going to, if judges make these mistakes... So that we found in Goodson that the defendant's substantial rights were not violated, right? Correct, Your Honor. Your Honor, I think that... Does that follow naturally from your statement that there really isn't any difference between this case and Goodson? I think that if I had to rest my argument on that, that's a thin reed indeed to rest my argument. All right. Well, that's a fair statement. I just didn't understand something. The government quotes on page 45 of its brief that if the government does not appeal, which it didn't do, then the defendant may have raised only these claims. One, the defendant's sentence exceeds the statutory maximum. Well, there's no such claim. And two, the sentencing judge erroneously deported upward from the otherwise applicable sentencing guideline range, and the judge didn't do that. And three, the sentencing judge imposed an unreasonable sentence above the final sentencing guideline range determined by the court. Well, there wasn't any sentence above the final guideline range, so I just... It looked like, well, the way it was written, you can't appeal. Well, Your Honor, it's correct. If the appeal waiver is enforced, we're out of court. My argument... Well, now, wait a minute. There's one other thing. There has to be. It would be enforced unless to enforce it would work a miscarriage of justice. Or unless, Your Honor... Which has to be your argument. Well, no, Your Honor. My argument is that it's not. Is that, in fact, the plea agreement is void because... Let me ask you this, Mr. Sultan, if I may. The district court, the record reflects, specifically inquired about the plea agreement signed by the defendant, which Mr. Carter, your client, said he had read, quote, several times, including multiple times before signing. He said he understood the entirety of the plea agreement and signed it of his own free will. The court further ascertained that the defendant was satisfied that the attorney had provided competent representation in the matter. And then we had this colloquy, if I may burden you a moment further. You understand that this plea agreement, in paragraph number nine, has a waiver of appeal rights provision. Answer, yes, I do. Did you talk to Mr. Cedrone about it? Yes, I did. Do you understand that you are waiving your rights to appeal in that paragraph?  I'm kind of slow, sir. I read this as an indication that your client did what he had to do, knew what he was doing. What are we doing here, Mr. Sultan? That's my simple question. Well, respectfully, Judge Ackerman, what we're doing here is we're looking at whether or not this plea agreement is void because under principles of contract law, which this court and every other court has said apply to plea agreements, there has to be some consideration. I'm not here arguing. Let me just interrupt for a moment. Yes, Your Honor. And I propose in so doing to perhaps answer Judge Ackerman's question with a concession by you moments ago that Goodson effectively disposes of your argument as to the Rule 11 colloquy, correct? Yes, Your Honor. So let's move to the consideration point. You would agree, would you not, that the government could have indicted your client on numerous other charges, correct? Well, before or after the plea agreement, I could have done so, yes. Well, let's just deal before the plea agreement. Sure. So that would be consideration, would it not? No, Your Honor. No, no, no. Your Honor. No, I'm not. So respectfully, you have to look at the four corners of the plea agreement. I'm not talking about what is written in the plea agreement. I am saying that would be consideration, yes? Your Honor, what is written. It has to be. The answer is yes. The plea agreement on its face has an integration provision. It says there are no promises, no agreements other than what's here. It does not say in this plea agreement that the government agrees it will not bring any other charges. It does not say anything about bringing other charges. The government makes no promises, makes no representations, makes no debt. There's nothing in there that's detrimental to the government. The defendant makes 20 promises that are detrimental to him. That is no consideration. Looking at the four corners of this contract, there is no consideration, not an adequate consideration, no consideration. That means it's void. In this court, I respectfully say that should not be counted as this. Well, there's no consideration recited. That is not the same as there being no consideration. I don't agree with that, Your Honor. Let me ask you this question. Sometimes we do get cases, not often, but it happens, where a defendant walks in as an attorney. There's no plea agreement, no anything. The defendant's been indicted on one, two, whatever counts. And the defendant simply pleads guilty. In other words, nobody promised him a discussion that discussed anything. My clients do that all the time, Your Honor. Yeah, and that is usually that doesn't happen, but it might. But that's not this case. So this case, he was represented by counsel and there was a plea agreement. Now, I realize you say it's not enforceable because there's no consideration. Why if he didn't get anything for it? Because he was obviously looking to make an agreement and to get something. This wasn't an open plea, as I think the term is. Why did he plead guilty? What was in it for him? Nothing was in it for him, Your Honor. I can't psychoanalyze him, and this court shouldn't engage in that, go down that slope. The court should look at the four corners of the agreement. And it contrasts cases like Caddick and Gwinnett and other cases. There's no consideration here. The defendant got nothing. He must have thought that there was something in it for him. Well, he was wrong if he thought that because there isn't. Well, he wasn't, but he wasn't. Probably his attorney said to him, even though it wasn't in the agreement, in fact, the government has not indicted him for any more offenses, has it? No, they haven't, Your Honor. They've been happy with their 15-year sentence. Is it your position that the government could come in today or tomorrow and indict him on numerous charges that it could have brought before? As long as they're not barred by the Double Jeopardy Clause, of course they can. There's nothing in that plea agreement that bars them from doing so. He got – he didn't get anything. And this court should – should – I mean, plea agreements is a court – Is there not an implicit promise – is there not at least an implicit promise that what he pled guilty to is the full extent of what he'll be charged with? Your Honor, that's not good enough. In cases like Caddock or Gwinnett, the agreement said, we're not going to bring any other charges or we're going to dismiss charges. So there you go. There's the failure to recite the promise. Well, that's – in contract law, that's the end of the ballgame, Your Honor. Well, wait. Maybe it would be the end of the ballgame if tomorrow they indicted him for 50 more counts. And then – then you could argue that they breached a promise to you, right? Consideration aside. They breached an implied promise not to do so. There's no implied promise. The agreement says in its face, all promises are recited here. Anything else has to be in writing. The court – if the court ignores that – No, it doesn't – it doesn't say that. It doesn't say all promises are recited here. It says actually in terms of the government's consideration, quote, unquote, in exchange for the undertakings made – it does say – it does have the all promises language at the end. I do agree with that. But it's reciting something. I don't know how the government defines undertakings. I'm sure they'll tell me, assuming that they can, you know, first convince themselves of the fact that consideration is even required here. Your Honor, my time is up. My point is it has to be in the four corners of the agreement. It has to be in the four corners of the agreement. And you're saying the government gave you absolutely nothing. Zero, Your Honor. Zero. So it wasn't a mere failure to recite consideration. There was no consideration. There's no consideration in that plea agreement. It's not that it's inadequate. It's that it's nonexistent. That makes it void under contract law. So there'd be no complaint if they indict you tomorrow. You can't argue there's any breach of any kind of an agreement. I suppose it depends on how this Court rules. But there's nothing in that agreement which stops them from doing so, Your Honor.  Thank you.  We'll get you in rebuttal. May it please the Court. My name is John Pease. I represent the United States, the appellee in this case. Sorry. You're not going to argue that error was not committed in the Rule 11 colloquy as to the waiver, are you, Mr. Pease? Our position is there was no error in the Rule 11 colloquy. After Goodson? I'm sorry, Your Honor, I didn't hear you. After Goodson, you're saying there was no error? There was no error in this case, Your Honor. In the Rule 11 colloquy as to waiver? Judge Ackerman accurately recited the transcript in which the Court addressed directly with Mr. Carter his understanding of the waiver provision. But that's not enough under Goodson. I can't believe you're telling me this. That's not enough under Goodson, under Goodson and under Corsa. Your Honor, the waiver provision, Mr. Carter, if I understand the argument that's correct, in the transcript of the guillotine hearing acknowledged he was giving up all of his rights to appeal, that he understood he was giving up all of his rights. He discussed it multiple times with his attorney, and as a well-educated person, knew he was giving up his rights. That's different. That's a different question. That is not my question. Whether his substantial rights were affected is another question. But the first question I ask you, and it's a very simple question, the 48 words that he used, was that sufficient under Goodson? Answer is no. I respectfully disagree, Your Honor. Judge Sarek did not cover every word of the appellate waiver provision, didn't recite the specific carve-outs exceptions that Mr. Carter would have as Judge Greenberg identified that are in the plea agreement. I agree. He did not specifically cover the provisions which would allow him to otherwise appeal where he could not in this agreement. I agree with that. None of those circumstances are relevant to this appeal. Mr. Carter, on the record, was willing to knowingly waive all rights to appeal without any exceptions, and Judge Sarek didn't cover the exceptions with him. That does not make it in the government's view a defective Rule 11 copy. He didn't cover most everything with reference to the waiver. He dealt with it in very nonspecific terms. He didn't go over the exceptions. He didn't do what he's supposed to do. He's supposed to do it before Goodson. He's surely supposed to do it afterwards, and I can't believe the government is standing here and telling me that that was not error. Since your friend across the aisle recognizes that Goodson really controls the issue here, there really is no colloquy issue that we need further argument on. I had a question here. Counsel says, well, you could go out and seek additional accounts for an indictment now, and the agreement doesn't bar that. What do you say about that? That's plainly wrong. We filed a very detailed information in this case identifying a 10-year scheme to defraud, and as part of an agreement with defense counsel charged merely one count. The second scheme to defraud related to the split dollar insurance policy, and lastly, we charged only one count of tax evasion covering a period of time of 10 years. Plainly, any additional charges relating to any of those broad schemes would be barred by the double jeopardy clause. There is simply no way under this agreement and the charges to which he pled guilty that  I'm just going to ask you this. I think I know the answer. I take it you have no intention of seeking such an indictment, do you? Absolutely not, Your Honor, nor could we. This agreement covered all of the relevant conduct that the government investigated and charged with respect to Mr. Carter, culminating in just three counts as opposed to hundreds. As Mr. Carter's prior counsel knows with respect to this issue of consideration, the record in this case reflects that Mr. Cedrone and I spent four months negotiating a guilty plea agreement. The counsel knows there was an indictment with hundreds of counts that was drafted. As part of this exchange, the bargain for exchange in this case, was that Mr. Carter did not want to be charged with hundreds of counts. He was charged simply with three, with no ability for the government to come back later and charge him with any additional counts. That in and of itself is sufficient consideration. The other question didn't relate to the merits, but I'm like the guy that Clint Eastwood had the gun on. He had to know that you have another bullet, you know. But the question is this. We postpone this because you might have gotten a question while a jury was deliberating in another case. Did that happen? There were no questions in any of the five days of deliberations. That is correct, Your Honor. Let's talk about this waiver of appeal and the timeliness and all of those things. You know, as you well know, this was fully briefed before Goodson, and you take the Court of Appeals somewhat to task about not ruling on your motion to enforce the waiver earlier. I think this case fell into that perhaps gray area where the clerk's office actually referred this to a merits panel and ordered briefing. I think after Goodson that probably won't happen so quickly. I don't know why it happened. Perhaps because it took six months for the government to file a motion to enforce the waiver. There were six months of arguing or applications on transcript, and then there was a change of defense counsel, and it took six months to file the motion. So now, you know, Goodson talks about our rule where it will go to a motions panel, and the motions panel will then decide the issue of whether the case should be summarily disposed of. Question. I know the government, and I think it's fair to say all involved, where there is a challenged waiver would like not to have to brief it on the merits. But even where, you know, it's knowing in a way, I'm voluntary, and even where it fits within, doesn't fit within the exception, we still have to review for miscarriage of justice, don't we? Yes, sir. So that can't always be done off a motion, can it? No, it cannot, Your Honor. Here, let me give you a hypothetical. You've got the obstruction of justice enhancement that is challenged. It's challenged for two reasons. It is challenged because the district judge did not make a finding of willful conduct, and it's challenged because the evidence is purportedly not sufficient to justify the enhancement. Now, supposing they were right, supposing the defendant hypothetically was right on either or both of those grounds, the sentence level, the total offense level, would drop from a 34 to a 29. And the guideline range from 151 to 188 months to 87 to 108. That's assuming three points for acceptance and two points for the enhancement. Now, I know you'd fight me in the third acceptance point, but that's just... Yes, Your Honor. But could not that present the miscarriage of justice, warranting denial of the motion to enforce? Your Honor, the answer to your question has been answered by this Court in Corso. In Corso, we had a six-level enhancement that the defendant was challenging, was imposed on him by the district court who sentenced him. And this Court in Corso firmly held that such a determination would not constitute a miscarriage of justice. It's not the kind of sentencing determination this Court is going to take up on appeal to overturn an appellate waiver. And in Corso, there was, as the Court knows... I'm assuming there is validity. In other words, there would be, there was an error. And an error that would cause the defendant to serve eight to ten more years than he would have served had error. I'm not suggesting that there was. But what I am suggesting is perhaps this was a case where we had to get briefing on the merits, just to be able to assure ourselves that a miscarriage of justice was not committed. Well, if I may, I'm sorry. If I may, Your Honor, I have two responses. First, the law in this circuit is very clear that defendants quibbling over enhancements to sentencing, to their sentencing, is simply not sufficient to constitute a miscarriage of justice, nor is it enough to overturn an appellate waiver. Well, there's a difference between quibbling and raising a, raising something that is substantial. And then, Your Honor, as to this issue about a merits panel addressing these waivers before their briefing schedule is issued, the court will recall in this case that Mr. Carter never, in the, in his response to our motion to enforce the appellate waiver, never raised miscarriage of justice. It was simply not addressed whatsoever. I agree that the, at the point in time where there is briefing over the enforceability of a waiver underneath, as part of a summary affirmance motion, a defendant, if he raises a colorable claim of miscarriage of justice, that could warrant further briefing and argument before the court. That never happened here. It was never, in fact, not only did it not happen at that level, it hasn't been raised in the, in the brief on appeal. What's the citation of Corso? It's not cited in the brief. I have it. It was December of 2008. It was in December of 2008, Your Honor. It is, the site is 549 F. 3rd 921. Corso is an even tougher case for the defendant in the sense that they found his substantial rights were affected. Indeed, Your Honor. And in that case, there was a complete failure by the district court judge to even address or discuss the appellate waiver. Well, I guess it's your view that, look, there's an argument here about how you calculate that loss, but that that's, well, you can make the argument, but you can make the argument both ways, and it just doesn't, that's the kind of thing that the waiver precludes. Certainly, and even more so in this particular case, Your Honor. If the court will recall, there were no guideline stipulations here, and Mr. Carter at the guilty plea hearing wanted to reserve for sentencing the right to challenge the government's loss calculations. That was something the government sought to avoid and didn't achieve, and we ended up with a two-day mini trial. And so going into this, Mr. Carter understood there was going to be a challenge, there was going to be a fight on the loss calculation, and that he very well may lose it, also losing the right to appeal. And in fact, when he addressed the court before sentencing, Mr. Carter implored it for leniency, arguing that in this case he has no appeal right, that whatever sentence the court imposes is one he's going to be stuck with. He knew full well throughout the course of dealing with the government that the day might come when he wasn't satisfied with the court's calculation of his guideline range, yet he would be left without the right to appeal. And that's precisely what happened here. When, and this is a serious question, when do we go behind the waiver of appeal to see whether a miscarriage of justice has been worked? Well, I think, I think one of the things this court is talking about. And can we do it without ordering briefing on the merits? Well, I think one answer to that is that you have to look at what remedy the defendant is seeking. Here, Mr. Carter didn't seek to invalidate or undo his guilty plea. He didn't ask to go to trial. He didn't proclaim innocence. And under those circumstances, the court has severely limited the right to appeal where there is a waiver. Now, if Mr. Carter had claimed that he was, you know, fooled or mistaken or somehow didn't understand what rights he was giving up and wanted to go to trial, that might be a situation where the court would have to look into it much more clearly. But those are the things. Carter did not even argue miscarriage of justice. That is correct, Your Honor. He did not in response to our motion for summary affirmance and in his brief on appeal. He did not, and nor could he. There's no basis for that. There's no showing of miscarriage of justice here. I suppose he would like to have us find the waiver was invalid and that error was committed in the sentencing, either in the intended loss or the obstruction of justice, remand for resentencing, and then he could appeal. Yes. Yes, Your Honor. Thank you. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. I certainly sense, I understand the court's concerns over resources, and I sense the court's hostility to an argument attacking the validity of the appeal waiver here. However, I just, I want to reemphasize. Well, I don't know hostile is the word. Well, Your Honor. There's not a, there has not, if you read it very, very closely here, there is no argument made that Mr. Carter did not fully understand what he was doing and the ramifications. That's not my argument, Your Honor. My argument is that. So to the extent one say, you say we're hostile, that may be in part because he knew what he was doing. Your Honor, in a world where. And he got what he perceived to be a tough sentence. This court has recognized that the government has enormous bargaining power in the context of negotiating a plea agreement. It's very easy for, they're the ones who, they're the ones who basically draft it. They're the ones who put it together. They stick it in front of a defendant to sign it. And to me, to ask that the government recite in the, within the four corners of that plea agreement, the consideration that they're giving the defendant, as they did in Caddock, as they did in Gwinnett, as they did in all these other cases. It's unusual. I'm not asking for much. If you take away that and say. It's unusual, yes. If you say it could be. It's unusual to see, at least in my experience, I've been around for a few years, a plea agreement without something recited. Without anything. Without anything. And for the court to just sort of shrug at that and say, well, it's implied, I think it's a terrible mistake, Your Honor. And so often when you're coming off an indictment, you've got more counts, and he's pleading to two of the counts, and you agree to dismiss the remaining counts. They just have to do their job. They have to put some consideration in there. And if they don't, they don't. But you're back to the recitation, aren't you? Well, you're right, Your Honor. That is the argument. And it has to recite. And it's a recitation. A failure to recite a miscarriage of justice. No. They have to recite for it to be a valid, enforceable agreement under principles of contract law that this Court has adopted for a century. There has to be consideration. If there's no consideration, it's a void contract. The consideration has to be recited. Is the contract void if the district court has accepted it? Of course it is, Your Honor. And put its seal on it. It doesn't change. And says this is a valid plea. I still remember the language. You can put a red ribbon around it, Your Honor. It doesn't change. And it will be embodied in the judgment and sentence. That doesn't change. That's what validates the plea. Well, that was error, Your Honor, because it was void. We got your consideration today because I asked the U.S. attorney whether or not they were going to indict him again. If we should affirm this and they would go for an indictment, I don't mean something that's got absolutely nothing to do with the museum. Just totally out of the blue. But in any way related to these matters at all, I think you can move to dismiss after what happened here today. It doesn't do him any good now, Your Honor. If it prevents him from having an appeal heard on the merits, that's where he's lost his opportunity to present his case in this court. But if that was in the agreement itself, then he would be presented. Now, I can't even conceive that the government has to, you know, it's a pretty stiff sentence, particularly for him because he's doing it. I mean, it's a long sentence for somebody of this kind, but the circumstances are unbelievable to me at least. But still, if the government would seek to indict him, I think you can move to dismiss. And then you did get your consideration, I think a court would grant it. Well, I appreciate that, Your Honor, but I respectfully, it has to be in the document. If it's not in the document, it doesn't count. Thank you, Court. I think we understand the argument. Thank you very much. This was very well argued. We are going to clear the courtroom so that we can conference this case with Judge Ackerman now. Thank you. We'll just stay here. Yeah. Okay. Do you have a case at one point? Ambrose Rindell and somebody else are sitting. We had a case. Thank you.